UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

GREGORY THURMAN,
     Plaintiff,

v.

FRANK BISIGNANO,[1] Commissioner
of Social Security,
     Defendant.

Case No. 2:24-cv-00076

Magistrate Judge Luke A. Evans

### MEMORANDUM ORDER

This action is before the Court pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (Doc. No. 1 at p. 1-2). The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. No. 9), and the matter is ripe for disposition (Doc. Nos. 15, 17, and 18). For the reasons set forth below, Plaintiff's Motion to Reverse and Remand (Doc. No. 15, "Motion to Remand") is DENIED, and the decision of the Commissioner is AFFIRMED.

### I. Background

Plaintiff, Gregory Thurman, filed his application for DIB on June 2, 2021, which alleged a disability onset date of July 15, 2020 (Doc. No. 12 at p. 32). Thurman's application was denied initially on October 1, 2021 and again upon reconsideration on June 30, 2022 (*Id*.). On August 14, 2023, Thurman appeared before an ALJ for a telephonic hearing (*Id*.).

---

[1]     Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Press Release, Soc. Sec. Nat'l Press Off., Fin. Servs. Indus. Leader Frank Bisignano to be the 18th Comm'r of Soc. Sec. (May 7, 2025), https://www.ssa.gov/news/en/press/releases/2025-05-07.html (last visited Sep. 24, 2025). Under Federal Rule of Civil Procedure 25(d), Bisignano is automatically substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

On October 25, 2023, the ALJ issued a decision finding that Thurman was not disabled (*Id*. at p. 52). Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since July 15, 2020, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*., and 416.971 *et seq*.);
2. The claimant has the following severe impairments: status post cerebrovascular accident; atrial septal defect; cervical degenerative disc disease; major depressive disorder; generalized anxiety disorder; and trauma and stressor related disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c));
3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c); such that he can only occasionally climb; can occasionally engage in balancing on uneven surfaces; can have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights; would be limited to the performance of simple, routine, and repetitive tasks; should work in a low-stress job, defined as one having only occasional decision-making and only occasional changes in the work setting; should have only occasional interaction with the public and with co-workers; and should engage in work establishing only production quotas based on end-of-workday measurements, and no assembly line work;
5. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965);
6. The claimant was born on August 21, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. §§ 404.1563 and 416.963);
7. The claimant has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964);
8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2);
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a); and
10. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2020, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

2

(*Id*. at p. 34, 35, 40, 51, and 52).

The Appeals Council denied review on July 17, 2024 (*Id*. at p. 10). As a result, the ALJ's October 25, 2023 decision is the final decision of the Commissioner subject to this Court's review.

## II.     Standard of Law

This Court reviews the record to determine: (1) whether substantial evidence on the record as a whole supports the decision, and (2) whether any legal errors were committed in the decision-making process. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)). "Under the substantial-evidence standard, the court looks to the administrative record and asks whether it contains "'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Moreover, even if the evidence supports a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

## III.    Analysis

Thurman argues that the ALJ's decision is not based on substantial evidence (Doc. No. 15-2 at p. 3). More specifically, Thurman contends that the ALJ failed to assess (i) the opinion of Psy.D. Crystal Duclos and (ii) his poor hygiene (*Id*. at p. 8). While unavailing, the Court will address each in turn below.

### A. Dr. Duclos's "Medical Opinion"[2]

Thurman argues that the ALJ failed to consider Dr. Duclos' opinion at all, which "twice reference[s] [his] 'poor hygiene[,]'" let alone the consistency of that opinion with other medical opinions in the record (*Id*. at p. 12-13).[3] In support, Thurman points to four other medical evaluations[4] that mentioned Thurman's hygiene (*Id*. at p. 13 and 18 at p. 3). Thurman believes that, absent the benefit of Dr. Duclos' opinion, the ALJ failed to properly assess the medical relevancy of Thurman's poor hygiene and related "inability to meet basic standards of neatness and cleanliness, which is a standard required by most competitive jobs" (*Id*.). The Commissioner responds that the ALJ did not fail to consider medical evidence at all because Dr. Duclos did not provide a medical opinion (Doc. No. 17 at p. 4-6). Rather, the Commissioner contends that Dr. Duclos conducted merely a preliminary review of Thurman, and provided only a summary of prior medical records and a recommendation for additional examination (*Id*.).

In reviewing the medical records, Exhibits 1A, 3A, 5A, 6A, 7A, 8A, 6F, and 14F, as provided by Psy.D. Emma L. Peden, Ph.D. Maryann Wharry, Psy.D. Stacy Koutrakos, M.D. John J. Lassegard, Ph.D. Cherise Lerew, and Dr. Duclos, each briefly mention Thurman's poor hygiene (Doc. No. 12 at 92-95, 103-06, 113-16, 123-26, 134-36, 144-46, 599, 608, and 627-28). However, each exhibit, including Dr. Duclos's evaluation, merely notes Dr. Lerew's September 2021 observation of poor hygiene within their respective summaries of prior medical history (*Id*.).[5]

---

[2] According to Thurman, Dr. Duclos is not a treating physician (Doc. No. 18 at p. 1). However, Thurman argues that the ALJ ignored or cherry-picked evidence (*Id*. at p. 2).

[3] The Court notes a labeling error in the Court Transcript Index identifying Dr. Duclos' evaluation as Exhibit 14F and not Exhibit 11F (*Cf*. Doc. Nos. 12 at p. 611-14 and 621-23).

[4] Thurman specifically mentions the exhibits respective to Dr. Wharry, Dr. Koutrakos, Dr. Lassegard, and Dr. Lerew (Doc. No. 12 at p. 85-94, 107-116, and 601-607).

[5] Following Dr. Duclos' recommendation for additional examination, Dr. Lerew again evaluated Thurman in June 2022 without mention of his hygiene at all (Doc. No. 12 at p. 629-33).

Additionally, upon review of the ALJ's decision, the ALJ noted Dr. Lerew's observation no less than five times (Doc. No. 12 at p. 37, 39, 45, 47, 50, and 608). More specifically, the ALJ acknowledged that Dr. Lerew observed Thurman to have poor hygiene on that occasion, but also "observed [Thurman] to be oriented, with adequate attention and concentration skills, . . . and the ability to follow simple instructions" (*Id*. at p. 37, 39, and 45). Ultimately, the ALJ found (i) Dr. Wharry, Dr. Peden, Dr. Koutrakos, Dr. Lassegard to be "persuasive to the extent that they support the finding that the claimant has severe mental impairments but that cause no more than moderate limitations in multiple areas of mental functioning" and (ii) Dr. Lerew to be "generally persuasive to the extent that it supports the finding that the claimant has limitations in regard to interacting with others" (*Id*. at p. 49-50).

Here, Thurman is correct that the ALJ did not mention Dr. Duclos' medical evaluation. However, Thurman failed to provide sufficient argument that Dr. Duclos' evaluation was a "medical opinion," as defined in 20 C.F.R. § 404.1513(a)(2), rather than "other medical evidence." *Cf*. 20 C.F.R. § 404.1513(a)(3) (defining other medical evidence as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the] impairments, [the] *medical history*, clinical findings, diagnosis, treatment prescribed with response, or prognosis") (emphasis added)); *see Torres v. Bisignano*, No. 3:24-cv-01509, 2025 WL 3785659, at *7 (M.D. Tenn. Nov. 20, 2025) (determining that "the ALJ was not obligated to determine the persuasiveness of [the contested evaluation] findings because they are 'other medical evidence' rather than 'medical opinions.'"); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022).

Moreover, the Court is not persuaded by Thurman's argument that the ALJ "cherry-picked" evidence (Doc. No. 18 at p. 2), when the ALJ cited the relevant evaluation, and specifically noted

Dr. Lerew's observation of poor hygiene, no less than five times (Doc. No. 12 at p. 37, 39, 45, 47, 50, and 608). While not explicit what weight Dr. Lerew's singular observation was afforded by the ALJ, it is clear that the ALJ did not find the reviewing State agency physicians and psychological consultants to be persuasive, supported, and consistent with the other evidence in the record beyond a "severe mental impairments but that cause no more than moderate limitations in multiple areas of mental functioning" or "limitations in regard to interacting with others," respectively (*Id*. at p. 49-50).

It is seemingly apparent that Dr. Duclos did not provide a statement about what Thurman could still do despite his impairments or even whether he had one or more impairment-related limitations or restrictions (Doc. Nos. 12 at p. 627-28 and 17 at p. 4-5). *See* 20 C.F.R. § 404.1513(a)(2). Rather, the Court agrees with the Commissioner that Dr. Duclos' evaluation is better categorized as a generalized and superficial summary of his medical history and a recommendation for further evaluation (*Id*.). *See Torres*, 2025 WL 3785659, at *6-7. Accordingly, because the ALJ was under no obligation to assess the persuasiveness of other medical evidence from a medical source that is not objective medical evidence or a medical opinion, the Court rejects this portion of Thurman's assertion of error.

### B.      Thurman's Poor Hygiene

Next, Thurman argues that the ALJ's failure to consider his "poor hygiene" as a mental limitation, rather than a personal choice, is a reversible error because cleanliness is a critical aspect for his residual functional capacity (Doc. No. 15-2 at p. 17). That is, whether the ALJ rejected this limitation as unpersuasive or omitted it unintentionally (*Id*. at p. 16), hygiene is a reasonable requirement for any placements as a laundry laborer, meat trimmer, or caretaker (*Id*. at p. 16).

Alternatively, the Commissioner argues that the ALJ did not consider Thurman's hygiene as part of any medical opinion because it was not part of an actual medical opinion (Doc. No. 17 at p. 7-9). The Commissioner also argues that "[t]here is no indication that hygiene deficiency was something that 'result[ed] from' the medically determinable impairments" because there is no evidence that a medical professional linked bad hygiene as a result from any medical impairment (*Id*. at p. 9). In reply, Thurman clarifies that his poor hygiene is neither "simply 'being unkempt[,]'" nor "an 'alleged symptom alone[,]'" but rather especially problematic because the vocational expert jobs agreed upon require good hygiene (Doc. No. 18 at p. 3-4).

It is of course rather obvious to any reasonable person that someone with poor hygiene would be inappropriate for placements as a laundry laborer, meat trimmer, or caretaker (Doc. No. 15-2 at p. 16). However, it is not appropriate for this Court to supplant the conclusions of the ALJ where there is substantial evidence to support his conclusions. *Callahan*, 109 F.3d at 273; *Blakley*, 581 F.3d at 406. This is especially true where, as here, the Court has various reasons to doubt whether Thurman's poor hygiene is substantially supported.

While Thurman contends that the ALJ rejected the issue of hygiene as unpersuasive or omitted it unintentionally, the ALJ repeatedly noted Dr. Lerew's September 2021 observation (Doc. No. 12 at p. 37, 39, 45, 47, 50, and 608). Even where the weight afforded to that solitary observation is unknown, the Court agrees with the Commissioner that Thurman has failed to sufficiently argue that Dr. Duclos provided a medical opinion supporting a finding of poor hygiene, let alone connecting his hygiene to one or more of medical impairments (Doc. No. 17 at p. 7-9).

Relatedly, Thurman's poor hygiene is not entirely consistent with the record generally. That is, Thurman's poor hygiene appears to be based on Dr. Lerew's singular observation in September 2021 rather than various medical opinions as Thurman contends (*Cf.* Doc. No. 12 at

92-95, 103-06, 113-16, 123-26, 134-36, 144-46, 599, 608, and 627-28). Indeed, Thurman offers no medical opinions that address hygiene beyond a recantation of his medical history. *See Pugh v. Astrue*, No. 1:09–CV–112, 2010 WL 1544271, at *8 (E.D. Tenn. Feb. 17, 2010) (concluding the ALJ's determination was supported by substantial evidence in comparing occasional references to "marginal hygiene" to the majority of the other medical evidence); *see also Eversole v. Comm. Of Soc. Sec.*, No. 1:12–cv–592, 2013 WL 2948328, at *7 (S.D. Ohio June 14, 2013).

Moreover, the ALJ has clearly and explicitly pointed to Dr. Lerew's other observations from September 2021, namely that Thurman was "oriented, with adequate attention and concentration skills, . . . and the ability to follow simple instructions" (*Id*. at p. 37, 39, and 45). Even if this Court were to view Thurman's hygiene as adequately documented and supported by one or more medical opinions (Doc. No. 18 at p. 3-4), which it does not, a reasonable mind could accept that his oriented attention, concentration skills, and ability to follow simple instructions could lead to an improvement in hygiene and, in turn, support the ALJ's determination as to Thurman's moderate limitations. *See, e.g., Wagner v. Saul*, No. 1:19cv2605, 2020 WL 3433294, at *12-13 (N.D. Ohio June 23, 2020) (finding substantial evidence in support of the ALJ's conclusion as to a moderate limitation where a claimant's reported hygiene deficit was not consistent across the record and improved with education). Similarly, a reasonable mind could simply disregard Dr. Lerew's observation as a one-off event considering the singularity in reference to Thurman's hygiene or, alternatively, view the reportedly poor hygiene as a mere symptom of his severe impairment of major depressive disorder (Doc. No. 12 at p. 35).

Thus, while Thurman accurately contends that poor hygiene would be especially problematic because the vocational expert jobs require good hygiene (Doc. No. 18 at p. 3-4), the evidentiary record as a whole does not support a finding that Thurman has poor hygiene, let alone

8

a connection between Thurman's hygiene to medically determinable impairments. For these reasons, and consistent with the ALJ's findings, the Court also rejects this portion of Thurman's assertion of error.

**IV.    Conclusion**

Accordingly, the Motion to Remand is DENIED (Doc. No. 15) and the decision of the Commissioner is AFFIRMED. The Clerk of the Court is directed to enter judgment and to take the steps necessary to close this case.

It is so ORDERED.

LUKE A. EVANS
United States Magistrate Judge

9